# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY CAMDEN VICINAGE

| | |
|---|---|
| OPHELIA HAZELTON,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil No. 17-10953 (RMB)<br><br>**MEMORANDUM OPINION & ORDER** |

**BUMB**, United States District Judge:

This matter comes before the Court upon an appeal by Plaintiff Ophelia Hazelton ("Plaintiff"), seeking judicial review of the final determination of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for social security disability benefits. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.

I. <u>PROCEDURAL HISTORY</u>

On January 15, 2014, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act, alleging disability beginning June 18. 2013. The claim was initially denied on January 20, 2015, and again upon reconsideration on April 22, 2015. On April 20,

1

2017, Plaintiff testified at an administrative hearing held before Administrative Law Judge Nicholas Cerulli.  At the hearing, Plaintiff was represented by her attorney, Danielle Webb.  The ALJ also heard testimony from a vocational expert.

On July 6, 2017, the ALJ issued a decision denying Plaintiff's claim for benefits, based upon his finding that Plaintiff "is capable of performing past relevant work as an administrative clerk and an admissions clerk." R.P. at 89.  On October 4, 2017, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as final.  Plaintiff now seeks this Court's review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence" means "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

2

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in

20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.
>
> Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume her former occupation, the evaluation moves to the final step.
>
> At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform,

consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

III. **FACTUAL BACKGROUND**

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff was born on September 9, 1953 and was 59 years old at the alleged onset date. R.P. at 100-101. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017. R.P. at 82.

Plaintiff has past relevant work experience as an administrative clerk, hospital admissions clerk, phlebotomist, and community worker. However, Plaintiff claims that she is disabled and unable to work due to degenerative disc disease ("DDD"), osteoarthritis, multiple sclerosis ("MS"), a partial tear/tendinosis/degenerative joint disease of the right shoulder, left carpal tunnel syndrome, obesity, chronic pain syndrome, and depression, with an onset date of June 18, 2013. R.P. at 82-83.

### A. *Plaintiff's Medical History and Testimony*

At the administrative hearing, Plaintiff testified that she last worked on June 18, 2013, before having surgery on her foot at the end of June 2013. R.P. at 105-107. Plaintiff stated that "after the surgery, my foot was healing, but the rest of my body was in pain." Id. In July 2013, Plaintiff began seeing an orthopedist for right shoulder and neck pain. Thereafter, MRIs of Plaintiff's shoulder revealed a partial tear of the rotator cuff. Subsequent MRIs also indicated some disc protrusions in her lumbar and cervical spine. Id. at 86-87. By September 2013, Plaintiff noted that her shoulder pain had improved through physical therapy, but pain management was recommended for continuing neck pain. Id. at 87.

In February 2014, Plaintiff was started on treatment for multiple sclerosis, but a second medical opinion did not find conclusive evidence of MS and advised against treatment. In May 2015, Plaintiff was started on injections for MS after complaining of leg pain and burning. At a September 2015 follow-up appointment, Plaintiff reported no symptoms of MS and was instructed to continue her injections. By February 2016, Plaintiff was reportedly stable with the use of medication. Id. In a May 2016 appointment with her primary care physician, Plaintiff exhibited "normal gait, normal strength and tone and

6

no joint tenderness or swelling." As of November 2016, Plaintiff continued to complain of pain related to degenerative disc disease, but was considered to be "doing well" from an MS prospective. Id. at 87-88.

Plaintiff testified at the administrative hearing that she cannot work because she is "in pain everyday." R.P. at 109. Plaintiff indicated that she experiences pain "all the time, everyday," in her legs, arms, neck, buttocks, and head. Id. at 109-110. Plaintiff explained that "sometimes it's a shooting pain… and then sometimes it feels like a toothache." Id. According to Plaintiff, her pain is impacted by the weather and she "really can't function" when it is cold and damp, but she "can tolerate the heat more than [she] can tolerate the cold." Id. at 111. Plaintiff stated she takes medication for her pain, but it is not entirely effective. She explained that she has been prescribed stronger medication, but does not take it due to fear of becoming addicted. Plaintiff testified that she has trouble sleeping due to pain and takes a sleep aid at times. According to Plaintiff, she can sit for about an hour at a time, with the ability to adjust positions and can stand for about a half-hour at a time. She stated that she is able to walk about a half block to shop at a CVS pharmacy near her house. Id. at 118. Plaintiff was walking with a cane at the administrative

hearing, but stated that she does not like using it, but had to use it "right now" because her left leg was swollen and hurting. Id.

Plaintiff first sought treatment for depression in September 2016. R.P. at 83. At that time, Plaintiff complained of chronic pain and trouble dealing with her 11-year old granddaughter, who is diagnosed with ADHD. Id. During a 2014 examination in connection with her application for social security benefits, Plaintiff indicated that her emotions were "all over the place" and that she had "occasional crying spells and irritability," but the treating physician opined that her memory and concentration were fair to good. Id. At the time of the administrative hearing, Plaintiff testified that she was treating her depression by taking Celebrex and seeing a therapist approximately once a week. Id. at 124-125.

Despite Plaintiff's claimed limitations, she serves as the legal guardian of her granddaughter and engages in various daily activities. R.P. at 102-103. On a typical day, Plaintiff will get up, make breakfast, and watch television. Plaintiff testified that she cooks sometimes, does light housework, such as laundry, and can wash dishes if she sits on a stool near the sink. Id. at 121. Plaintiff also stated that she does not have any difficulty driving or sitting in a car and drives herself to

church, appointments with doctors, and the grocery store. Id. at 103-104. Plaintiff explained that she has no difficulties when she goes grocery shopping because "I know what I'm going to get, and I go in and get it and come out" and has her granddaughter carry the groceries up the stairs into the house from the car. Id. at 122. Plaintiff attends church once a week and sits for the entire two-hour service.

### B. *The ALJ's Decision*

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of the decision. Upon consideration of the evidence of record and Plaintiff's testimony at the hearing, the ALJ determined that Plaintiff had a Residual Functional Capacity ("RFC") that meant she was capable of performing her past relevant work as an administrative clerk and an admissions clerk.

At Step One of the sequential analysis the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 18, 2013. R.P. at 82. At Step Two, the ALJ determined that Plaintiff's "severe" impairments were "degenerative disc disease, osteoarthritis and multiple sclerosis." Id. The ALJ concluded that Plaintiff's hypertension, obesity, and depressive disorder were not "severe"

9

impairments because "the medical evidence does not establish that they create more than a minimal limitation on the claimant's ability to perform basic work activities." Id. at 83.

At Step Three the ALJ determined that Plaintiff did not have an impairment that meets or is medically equivalent to the severity of one of the listed impairments in 20 C.F.R. Part 404, Appendix 1, Subpart P.

At Step Four, the ALJ determined that the Plaintiff:

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can only occasionally climb, balance, stoop, kneel, crouch and crawl; frequently reach, handle, finger, and feel; and must avoid concentrated exposure to extreme cold, wetness and hazards, such as unprotected heights and moving machinery.

R.P. at 85. In making this decision, the ALJ considered the "entire record" and "all symptoms" to the extent that they were consistent with the evidence of record. Id. The ALJ found that Plaintiff's impairments could be expected to cause the alleged symptoms, however, the ALJ found Plaintiff's statements regarding the "intensity, persistence and limiting effects of these symptoms are not entirely consistent" with the evidence of record. Id. at 86.

The ALJ determined that Plaintiff could return to her past relevant work as an administrative clerk and an

admissions clerk because the work does not require the performance of work-related activities precluded by the Plaintiff's RFC. R.P. at 89. The vocational expert testified that based on Plaintiff's RFC of sedentary duty work with postural, manipulative, and environmental limitations that Plaintiff would be able to perform her prior relevant jobs in the manner as actually performed by Plaintiff and as generally performed in the national economy. Id.

**IV. DISCUSSION**

On appeal, Plaintiff argues that the ALJ's disability determination is not supported by substantial evidence because the ALJ failed to: (1) account for Plaintiff's alleged mild mental limitations in the RFC analysis; and (2) include a sit/stand option in the formulation of Plaintiff's RFC. As a result of excluding these limitations from the RFC formulation, Plaintiff contends that the ALJ incorrectly concluded that Plaintiff retained the RFC to perform her past relevant work. This Court disagrees with Plaintiff.

With respect to RFC assessments, ALJ's are not required to include every alleged limitation in their hypotheticals and RFC assessments. See O'Bryan v. Colvin, 2014 WL 4649864, at *6 (W.D. Pa. Sept. 16, 2014). Rather, the ALJ's responsibility is

to "accurately convey" only "credibly established limitations" which "are medically supported and otherwise uncontroverted in the record." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir.2003).

### A. *Mild Mental Impairments*

First, Plaintiff argues that the ALJ committed a reversible legal error by failing to account for the impact of "mild" limitations on Plaintiff's ability to understand, remember, or apply information, interact with others, concentrate, persist or maintain pace, and adapt or manage herself. Plaintiff contends that these limitations should have been included in the RFC formulation at Step Four and considered in relation to Plaintiff's ability to perform her past relevant work..

Plaintiff's argument, that the ALJ should have accounted for mild mental limitations in the RFC, is unpersuasive because the ALJ thoroughly discussed Plaintiff's alleged mental impairments at Step Two. When determining that Plaintiff's depression did not cause more than a "minimal limitation," the ALJ considered the four broad areas of mental functioning as set forth in the Regulations. The ALJ concluded that "claimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-

12

severe. In fact, an examination determined that she has no severe mental impairment." R.P. at 83.

The ALJ noted that Steps Two and Three require a less detailed analysis of mental impairments than the RFC analysis used at Steps Four and Five, and, went on to discuss his reasons for excluding the "mild limitations" from the RFC formulation. R.P. at 84-85. The ALJ expressed serious credibility concerns with Plaintiff's alleged mental impairments, noting that (1) Plaintiff did not seek treatment for her alleged depression until September 2016, (2) Plaintiff was planning a trip to North Carolina for herself for a few weeks to "take care of herself" in October 2016, and (3) by November 2016, she only reported "some depression" and indicated that she was trying to connect with more people. Id. at 84.

Furthermore, the ALJ discussed with specificity his reasons for according little weight to Plaintiff's mental status examination in connection with her disability application in November 2014. At the time of that evaluation, Dr. Lawrence Mintzer, Ph.D. noted that Plaintiff's emotions were "all over the place" and stated that "she was not able to do the things she used to because of pain." Id. Upon examination, Dr. Mintzer found that Plaintiff's concentration was "fairly good" and that her memory was "fair to good." Dr. Mintzer opined that

13

Plaintiff suffered from "moderate to severe limitations" due to "a combination of physical and psychological problems." Id. The ALJ explained that he afforded little weight to Dr. Mintzer's opinion because it failed to specify the nature of claimant's limitations and was predicated upon claimant's physical impairments, which Dr. Mintzer did not evaluate. Id.

Meanwhile, the ALJ explained that he gave "great weight" to the opinions of Dr. E. Bergmann-Harms, Ph.D. (from the initial determination) and Dr. Alexander Golin, M.D. (who affirmed Dr. Bergmann-Harms' opinion on reconsideration), who opined that Plaintiff's mental impairments caused only mild limitations and were non-severe. The ALJ noted that these opinions were more credible because they were consistent with the evidence of record, which showed only recent allegations of depression that improved with treatment. The ALJ's credibility determinations are also consistent with Plaintiff's testimony from the administrative hearing, where Plaintiff testified that she has no difficulty playing "word games" on her computer, which presumably require memory and concentration. This Court finds that the ALJ provided a thorough explanation for his credibility determinations, which were supported by substantial evidence, and, therefore, this Court finds that the ALJ committed no

reversible legal error in excluding the alleged mental impairments from the RFC formulation.

### B. *Sit/Stand Option*

Next, Plaintiff alleges that the ALJ committed a reversible legal error by failing to include a sit/stand option in Plaintiffs RFC. However, Plaintiff's argument fails because the ALJ directly addressed the lone opinion Plaintiff cited in support of a sit/stand option and provided his reasoning for rejecting that opinion. See Roche v. Astrue, 2013 WL 1499511, at *5 (E.D. Pa. Apr. 12, 2013)(affirming the denial of social security benefits where "[t]he ALJ provided a well-reasoned analysis supported by substantial evidence, and properly did not include a 'sit-stand' option in his RFC assessment").

Plaintiff's asserted medical evidence in support of a sit/stand option is limited to a single opinion from one of Plaintiff's treating physicians, Dr. Moshen Kalliny, M.D., who opined that Plaintiff was unable to work given her physical condition and recommended that she pursue permanent disability. R.P. at 88. Subsequently, however, Dr. Kalliny stated that Plaintiff should be "limited to sedentary duty work, except she can only sit for up to 2 hours and stand/walk for 1 hour." Id. However, the ALJ

found that Dr. Kalliny's opinion was entitled to "little weight" as it was contradicted by evidence of record and his own conservative treatment, which "did not support such restrictive assessments." Id.  Although the ALJ found that Dr. Kalliny's opinions deserved little weight, the ALJ still found that Plaintiff was only capable of performing her past relevant work as "sedentary" and inquired with the vocational expert about the availability of sedentary positions.

"There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). Indeed, this Court's examination of further evidence from the record demonstrates that Plaintiff's argument also fails because the claimed error did not impact the outcome of the analysis in any way. See Rutherford, 399 F.3d at 556.

In his examination of the vocational expert, the ALJ inquired about the number of breaks that employers customarily give employees during an eight-hour workday. R.P. at 128.  Notably, the answer was three: a mid-morning break, a lunch break, and a mid-afternoon break.  This Court notes that Plaintiff testified at the administrative

hearing that she is able to sit for two hours straight during Church services. Id. at 123.  Logically, three breaks during the workday would mean that Plaintiff would have an opportunity to sit or stand at will during breaks occurring at two hour intervals throughout the workday. Presumably, the amount of time allotted to each of these breaks would provide Plaintiff with sufficient time to stand during a workday.  Plaintiff's own testimony that she can only stand for "maybe a half hour" at a time before needing to sit again, R.P. at 117-118, demonstrates that Plaintiff does not even believe herself capable of standing for extended periods of time throughout the workday. Common sense also dictates that individuals in administrative clerk or admissions clerk positions will often have the opportunity to sit or stand intermittently throughout the course of the workday, even outside of regular breaks.

Under Third Circuit Precedent, "the ALJ can reject [] a limitation if there is conflicting evidence in the record." Rutherford, 399 F.3d at 554.  The ALJ directly discussed and rejected the lone medical opinion prescribing a sit/stand option for Plaintiff.  Furthermore, the ALJ's decision is supported by common sense and Plaintiff's own

17

testimony in the record. Thus, this Court finds that the ALJ's decision to exclude the sit/stand option from the RFC was based upon substantial evidence.

### V. CONCLUSION

For the reasons set forth above, the ALJ's determination that Plaintiff is not disabled under the Social Security Act is affirmed.

**ACCORDINGLY**, it is on this **28th** day of **February 2019**, hereby

**ORDERED** that the decision of the Administrative Law Judge is **AFFIRMED**; and it is further

**ORDERED** that the Clerk of the Court shall close this case.

DATED: February 28, 2019

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE